## 13833. DAVIS, agent, etc., v. MANRY.

1. A tender and the locomotive to which it is attached constitute a " car " within the meaning of the safety-appliance acts of Congress. Pennell v. Philadelphia & Reading Railway Co., 231 U. S. 675 (34 Sup. Ct. 220, 58 L. ed. 430).
2. The provision of section 2 of the safety-appliance act of April 14, 1910 (U. S. Comp. St. § 8618), requiring that " all cars having ladders shall also be equipped with secure handholds or grab-irons on their roofs at the tops of such ladders," in view of the ruling of the interstate-commerce commission appearing in the record, and the undisputed evidence showing that a tender (with the locomotive to which it is attached) is within the class of " cars having ladders," and in view also of the general intent and purpose of the act, was properly held applicable to the tender, notwithstanding a tender, in a strict and literal sense, may have no roof.
3. The verdict in favor of the plaintiff was supported by the evidence, and no error of law appearing, the overruling of the motion of the defendant for a new trial was not improper.

DECIDED APRIL 18, 1923.

Action for damages; from Lee superior court — Judge Littlejohn. July 8, 1922.

Application for certiorari was denied by the Supreme Court.

*Pottle & Hofmayer,* for plaintiff in error.

*Walter De Fore, James C. Estes, Ware G. Martin,* contra.

BELL, J. The plaintiff recovered a verdict and judgment against the defendant in the sum of $7,500. The suit was under the Federal employers' liability act. The defendant excepts to the overruling of his motion for a new trial. The special assignments of error complain of certain charges of the court and of the refusal of requests to charge, but a determination of each of them will involve only the question of a proper application of section 2 of the safety-appliance act of April 14, 1910 (U. S. Comp. St. §§ 8657-8665). The same question is presented by exceptions to the overruling of a special demurrer to parts of the petition.

The plaintiff alleged that after having crossed from the front to the rear of the tender, he was thrown to the ground and run over by the cars, thus sustaining the injuries for which he sued. It is alleged that the defendant was negligent in failing to place a grab-iron or hand-hold on the sheet-iron flange of the tender at or near the top of the ladder attached to the tender at the rear. Section 2 of the safety-appliance act above referred to provides: " All cars requiring secure ladders and secure running boards shall

be equipped with such ladders and running boards, and all cars having ladders shall also be equipped with secure hand-holds or grab-irons on their roofs at the tops of such ladders." The trial court, in its charges and rulings, held that this section is applicable to tenders, and in this holding it is claimed there was error, for the reason that tenders have no roofs. The question seems never to have been passed upon directly by any other court, and the answer is not easily derived from the statutes themselves. But section 1 of the act provides: "that the provisions of this act shall apply to every common carrier and every *vehicle* [italics ours] subject to the act of March second, eighteen hundred and ninety-three, as amended April first, eighteen hundred and ninety-six, and March second, nineteen hundred and three, commonly known as the 'safety appliance acts.'" What vehicles, then, are subject to the previous acts herein mentioned? It is provided in the act of March 2, 1903, that that act and the previous acts should apply to "all trains, locomotives, tenders, cars and similar vehicles, used on any railroad engaged in interstate commerce . . . and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith," with certain exceptions, not material to the present consideration.

Section 3 of the act of April 14, 1910, provides that the interstate-commerce commission shall designate the number, dimensions, location, and manner of application of the appliances provided for by section 2 of this act and of section 4 of the act of March 2, 1893. A rule of the commission appearing in the evidence and conceded by both sides to apply to tenders is as follows: "A suitable metal end or side-ladder shall be applied to all tanks more than forty-eight inches in height, measured from the top of end-sill, and securely fastened with bolts or rivets." Furthermore, it is established by the undisputed evidence that tenders have ladders. Notwithstanding the promulgation by the commission of the rule above quoted, it seems not to have required the placing of hand-holds or grab-irons upon tenders at the top of such ladders, and yet if the provisions of the appliance act herein considered should apply to tenders, the commission would have no power to dispense with a compliance therewith by a failure to include in their regulations a reference to hand-holds or grab-irons. Illinois Central Railroad Co. v. Williams, 242 U. S. 462

(37 Sup. Ct. 128, 61 L. ed. 437). The locomotive and tender to-gether constitute a " car " within the meaning of the safety-appliance acts. Pennell *v.* Philadelphia & Reading Railway Co., 231 U. S. 675 (34 Sup. Ct. 220, 58 L. ed. 430). Referring to the provisions of sections 2 and 3 of the act of 1910, it was said by the Supreme Court in the case of Williams, supra, that " the purpose of the 3d section is to require that the safety appliances ' provided for by section 2 of the act ' shall ultimately conform to a standard to be prescribed by the interstate-commerce commission; that is, that they shall be standardized, shall be of uniform size and character, and, so far as ladders and hand-holds are concerned, shall be placed as nearly as possible at a corresponding place on every car."

As seen already, the only reason suggested by plaintiff in error in support of the contention that these provisions do not apply to tenders is that tenders have no roofs, and that section 2 in reference to grab-irons is applicable only to cars having roofs. A tender and the locomotive to which it is attached are to be considered as a " car," and it appears unmistakably by the record that such a car is one required to have a ladder (attached to the tender). Section 2 requires that such cars shall be equipped with grab-irons on their roofs at the tops of the ladders. Inasmuch as tenders, *strictly speaking, have no roofs, we come to an apparent* inconsistency in the law. In seeking a harmonious construction considerations of lesser importance should yield to the principal intent and purpose of the act. The prime object of the particular provision in question was the promotion of the safety of the employees. The acts are to be interpreted and applied in view of practical railroad operations. Boehmer *v.* Pennsylvania Railroad Co., 252 U. S. 496 (40 Sup. Ct. 409, 64 L. ed. 680). From the viewpoint, then, of the ends to be attained, what is the significance of " roofs "? A roof is ordinarily intended for shelter, but that is not the object here to be accomplished, and the word " roofs," as employed in the act, is not necessarily to be understood in its ordinary literal import. The term should be construed not as applying to a part of the car designed for shelter, but as a place over which employees must pass in the discharge of their duties, or as a part of the car to which they may lay hold for their safety when ascending or descending to or from the top of the ladders, for any

purpose in the discharge of their duty. Viewing the question from this angle, we think that the trial court was right in holding that section 2 of the act of April 14, 1910, should be applicable not only to cars literally having roofs, but to tenders as well. Any other construction would render more acute and pronounced the apparent inconsistency referred to, since the provision would then be inapplicable to some cars having ladders, though expressly applying to all cars so equipped. We think it more reasonable to construe the term " roofs " in the light of the use of a roof, within the above-mentioned object and purpose of this section.

No error of law appears to have been committed during the trial, and, the evidence being sufficient to authorize the verdict, the overruling of the carrier's motion for a new trial is affirmed.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*